## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL MCGRATH, Jr., | : | |
| | : | |
| Plaintiff, | : | Civ. No. 23-13006 (RBK) (MJS) |
| | : | |
| v. | : | |
| | : | |
| C.O BENTON, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

### I.    INTRODUCTION

Plaintiff, Michael McGrath, Jr. ("Plaintiff" or "McGrath"), is a federal prisoner currently incarcerated at U.S.P. Terre Haute in Terre Haute, Indiana. He is proceeding pro se with a civil complaint filed pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* ECF 1). Plaintiff has also filed a motion for the appointment of pro bono counsel. (*See* ECF 6). Previously, this Court granted Plaintiff's application to proceed *in forma pauperis*. (*See* ECF 7).

In addition to deciding Plaintiff's outstanding motion for the appointment of pro bono counsel, this Court must screen Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or whether Plaintiff seeks monetary relief from a defendant who is immune from suit. For the following reasons the complaint is proceeded in part and dismissed in part. The motion for pro bono counsel is denied without prejudice.

## II.        FACTUAL AND PROCEDRUAL BACKGROUND

The allegations stated in the complaint will be construed as true for purposes of this screening opinion. The events giving rise to this civil complaint occurred while Plaintiff was incarcerated at F.C.I. Fairton in Fairton, New Jersey. He names the following individuals as Defendants in this action:

1. Correctional Officer Benton;

2. Correctional Officer Hernandez;

3. Lieutenant Marrugo;

4. Nurse Practitioner Hanson;

5. Clinical Director DeMonte;

6. Doctor Lopez;

7. Medical Administrator Martin;

8. S.I.S. Lieutenant Wilder;

9. S.I.S. Investigator Kopistici;

10. C-Unit Counselor Brooks;

11. C-Unit Case Manager Defoney; and

12. C-Unit Case Manager Gibson.

Plaintiff's complaint centers around two separate issues that occurred during his incarceration at F.C.I. Fairton. The first involves the medication (or lack thereof) he received at F.C.I. Fairton regarding his mental health and night tremor symptoms. The second involves the initial care he received and subsequent circumstances arising from an assault on Plaintiff by other inmates that occurred on March 19, 2023. For purposes of this opinion, the first claim will be referred to as Plaintiff's "medication related claims" and the second will be referred to as

2

Plaintiff's "assault related claims." Defendants Clinical Director Demonte and Doctor Lopez are the Defendants Plaintiff names as those involved in his "medication related claims." Defendants Officer Benton, Officer Hernandez, Lieutenant Marrugo, Medical Administrator Martin, S.I.S. Investigator Wilder and S.I.S. Investigator Kopistici are those involved in Plaintiff's "assault related claims."  Defendants Nurse Hanson, C-Unit Counselor Brooks, C-Unit Case Manager Defoney and C-Unit Case Manager Gibson are related to both Plaintiff's "medication related claims" and Plaintiff's "assault related claims."

A. Allegations Regarding "Medication Related Claims"

Plaintiff states that he was previously incarcerated at U.S.P. Lewisburg prior to his transfer to F.C.I. Fairton. (*See* ECF 1 at 9). He had previously been taken off a medication named Oxycarbazepine while incarcerated at U.S.P. Lewisburg. (*See id.*). When Plaintiff arrived at F.C.I. Fairton, he was seen by Defendant Nurse Hanson. (*See id.*). Plaintiff told her that he had nerve damage to his face as there is plate in his jaw due to it previously being broken and that he also has nerve damage to his arms, elbows and hands. (*See id.*). He requested to be re-prescribed Oxycarbazepine even though he admitted to the Nurse that it did not really work but that it "was better than nothing." (*See id.*). However, Defendant Nurse Hanson told Plaintiff that she would not re-prescribe that medication and neither would Defendant Doctor Demonte. (*See id.*).

Next, Plaintiff alleges he was seen by Defendant Doctor Lopez. (*See id.*). Plaintiff states that he was taking "Rimron" for his mental health as he suffered from night tremors. (*See id.*). Plaintiff though states that Defendant Doctor Lopez indicated that "Rimron" caused erectile dysfunction and thereby discontinued Plaintiff's "Rimron" medication. (*See id.*).

Plaintiff next asserts that he submitted sick call requests and was eventually seen by Nurse Knowles. (*See id.*). Nurse Knowles is not named as a Defendant in this action. Plaintiff

talked to Nurse Knowles about his nerve damage and night tremors. (*See id.*). She started

Plaintiff on Amitriptyline to treat those disorders as he was previously on this medication. (*See id.*). Plaintiff next states that he "submitted cop-outs" to Defendant Doctor Demonte about his

nerve pain and night tremors but received no response such that he was left to deal with his night

tremors and nerve pain for months. (*See id.*).

Plaintiff subsequently states that he had an EMG for his nerve pain. When the results

indicated that he did have nerve damage, Plaintiff was re-prescribed Oxycarbazepine, albeit at a

lower 600 mg dose rather than his previous 900 mg dose. (*See id.*). This still left Plaintiff in pain.

(*See id.*).

B. Allegations Regarding "Assault Related Claims

Plaintiff next describes an incident that occurred on March 19, 2023. He was jumped by

three inmates and stabbed thirty-six times. (*See id.* at 10). Defendant Officer Benton grabbed two

of the inmates while another inmate chased Plaintiff and continued to stab Plaintiff. (*See id.*).

Plaintiff states that Defendant Officer Benton should have sprayed that inmate who was chasing

him with "O.C. spray." (*See id.*).

Defendant Officer Hernandez also responded to the incident and placed Plaintiff in hand

restraints. (*See id.*). There was blood all over the room and Plaintiff alleges it was obvious he had

severe blood loss. (*See id.*). Nevertheless, Defendant Officer Hernandez pulled Plaintiff into the

laundry room. (*See id.*). Defendant Officer Hernandez then got a call from Defendant Lieutenant

Marrugo to take Plaintiff to the medical department. (*See id.*). Despite Plaintiff telling Defendant

Officer Hernandez that he could not walk, Defendant Hernandez dragged Plaintiff out of the unit.

(*See id.*). Plaintiff told Defendant Officer Hernandez he could not see or breath but was still

dragged to the EMT and medivac helicopter. (*See id.*). Plaintiff states Defendant Officer

Hernandez and Defendant Lieutenant Marrugo's reckless disregard and deliberate indifference caused him to walk to the helicopter rather than have medical attention be brought to Plaintiff due to his blood loss. (*See id.*). Plaintiff states that Defendant Lieutenant Marrugo was not in the building at the time of the incident. (*See id.* at 10-11).

Plaintiff further states that Defendant Nurse Hanson did not respond to the medical call. (*See id.* at 11). The medical cart that was used to try and take Plaintiff away broke down at the center gate. (*See id.*). According to Plaintiff, Defendant Nurse Hanson could have brought an "LT cart," wheelchair or stretcher for Plaintiff and that her failure to respond to Plaintiff's medical emergency put his life at risk when he was forced to walk to the helicopter. (*See id.*).

When Plaintiff returned to F.C.I. Fairton five days after the assault, Defendant Medical Administrator Martin brought him medication. (*See id.*). Plaintiff asked Defendant Medical Administrator Martin about the medical cart. (*See id.*). Plaintiff states that Defendant Medical Administrator Martin should not have had a broken medical cart outside of the medical department. (*See id.*).

Plaintiff states that he submitted grievances to Defendants Brooks, Gibson and Defoney. Plaintiff states that because of these grievances, he was targeted by staff. This targeting included, amongst other things, facing recreation restrictions, having property taken from him and receiving multiple disciplinary actions. (*See id.* at 11-12).

Plaintiff also alleges that the scissors used in the assault against him were not issued by the prison. (*See id.* at 12). Thus, they were either provided to the inmate by staff or stolen from the staff but never reported to security. (*See id.*).

Plaintiff states he was placed in the Special Housing Unit ("SHU") for 150 days while other victims were released. (*See id.*). Plaintiff states due to the long time he was placed in the

SHU, he suffered from post-traumatic stress disorder ("PTSD") and had mental health problems. (*See id.*). Plaintiff states that he submitted grievances to Defendants Brooks, Gibson and Defoney but they did not answer his grievances.

Plaintiff seeks declaratory relief and monetary damages. (*See id.* at 15).

## III.   LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to sua sponte dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive a court's screening for failure to state a claim, the complaint must allege sufficient factual matter to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014)

(quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## IV.    DISCUSSION

A.  <u>"Medication Related Claims"</u>

a.  Claims Against Defendant Nurse Hanson

Plaintiff's complaint raises two separate issues with respect to Defendant Nurse Hanson. First, as described above, Plaintiff saw her when he arrived at F.C.I. Fairton purportedly seeking to be re-prescribed Oxycarbazapine which Plaintiff had previously been taken off of while at U.S.P. Lewisburg. Second, Plaintiff alleges that Defendant Nurse Hanson should have responded to the medical call when the March 2023 assault occurred.

Initially, as all the Defendants in this case appear to be federal employees as they work at F.C.I. Fairton, Plaintiff's claims are brought under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016, 2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

"In order for liability to attach under [*Bivens*], a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81

(3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted); *see also Iqbal*, 556 U.S. at 676 (stating that respondeat superior cannot form the basis of a *Bivens* claim).

The Supreme Court has recognized, *in limited situations*, a private cause of action against federal officials. *See Bivens*, 403 U.S. at 389; *see also Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (stating "*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations."). "In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016, 2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

*Bivens* permits a damages remedy "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). The Supreme Court has extended *Bivens* to only a few other limited constitutional violations. *See id.* For example, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court held that the Fifth Amendment Due Process Clause gave an administrative assistant a damages remedy against a Congressman for firing her due to gender. *See Ziglar*, 582 U.S. at 131. In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held the Eighth Amendment gave a prisoner's estate a damages remedy against prison officials for failing to provide adequate medical treatment. *See Ziglar*, 582 U.S. at 131; *see also Dongarra v. Smith*, 27

F.4th 174, 180 (3d Cir. 2022) (noting the Supreme Court has only recognized implied causes of

action in *Bivens, Davis* and *Carlson*).

Plaintiff's *Bivens'* claims against Defendant Nurse Hanson fall within its purview since

Plaintiff seeks relief for Defendant Nurse Handson's purported deliberate indifference to

Plainitff's serious medical needs.

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.
> 1999). Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837,
> 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found
> deliberate indifference where a prison official: "(1) knows of a
> prisoner's need for medical treatment but intentionally refuses to
> provide it; (2) delays necessary medical treatment based on a
> nonmedical reason; or (3) prevents a prisoner from receiving
> needed or recommended treatment." *Rouse*, 182 F.3d at 197.
> Deference is given to prison medical authorities in the diagnosis
> and treatment of patients, and courts "disavow any attempt to
> second-guess the propriety or adequacy of a particular course of
> treatment ... (which) remains a question of sound professional
> judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d
> 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44,
> 48 (4th Cir. 1977)). Allegations of negligent treatment or medical
> malpractice do not trigger constitutional protections. *Estelle v.
> Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251
> (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found

"where the prison official persists in a course of treatment in the face of resultant pain and risk of

permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal

quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a

physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize

the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff's claim regarding being taken off Oxycarbazapine is belied by his own allegations in his complaint. Indeed, Plaintiff admits that after the results of his EMG came back, he was placed back on Oxycarbazapine, albeit, at a lower dose. Plaintiff's disagreement with the amount of dosage of his medication amounts to a mere disagreement in his treatment, which does not give rise to a claim as alleged against Defendant Nurse Hanson. *See, e.g.*, *Korn v. Marrero*, No. 15-338, 2016 WL 3676395, at *4 (E.D. Ky. July 7, 2016) (prisoner's "mere disagreement with the dosage of methadone, a potentially-addictive opiod pain medication, is insufficient to indicate deliberate indifference to his medical needs" where prisoner was prescribed lower dosage of methadone and "numerous other medications ... to address a plethora of health conditions"); *Tuck v. Maiorana*, No. 15–2556, 2016 WL 3469945, at *3 (W.D. La. Apr. 26, 2016) (recommending dismissal of *Bivens* claim where plaintiff's "complaint shows that he received a massive amount medical treatment, albeit not to his liking or in his preferred time frame," and merely "state[s] a disagreement with the medical staff regarding the procedures necessary to treat his medical issues"), *report and recommendation adopted*, 2016 WL 3466917 (W.D. La. June 21, 2016).

Plaintiff also fails to state a claim against Defendant Nurse Hanson related to her purported failure to respond to the medical call when Plaintiff was assaulted. As indicated above, for liability to potential attach to a defendant, there must be some personal knowledge alleged. There is nothing in the complaint whatsoever that Defendant Nurse Hanson was made aware of the assault that occurred against Plaintiff. Furthermore, Plaintiff's complaint indicates he was

rushed to a medivac helicopter. Accordingly, Plaintiff's claims against Defendant Nurse Hanson are dismissed without prejudice for failure to state a claim upon which relief may be granted.

> b. Claims Against Defendant Clinical Director DeMonte

Plaintiff's sole allegation against Defendant Clinical Director DeMonte is that once Plaintiff was put back on Antiriptilean by Nurse Knowles for his nerve damage and night tremors, Plaintiff submitted "cop-outs" to Defendant Clinical Director Demonte about his nerve pain. He received no response such that he was left to deal with his night tremors and nerve pain for months. Clearly, Plaintiff admits he was getting treatment for his nerve pain and night tremors, although, at least initially, not the type of medication to his liking. However, such claims regarding prescribing a different medication provided by prison medical staff is the type of disagreement between an inmate and medical personnel that falls short of alleging a constitutional violation. *See, e.g., Whooten v. Bussanich*, 248 F. App'x 324, 326-27 (3d Cir. 2007) (upholding grant of summary judgment that medical staff was not deliberately indifferent for treating migraine headaches with other medicines and only occasionally with the plaintiffs preferred drug); *Ascenzi v. Diaz*, 247 F. App'x 390, 391 (3d Cir. 2007) (upholding grant of motion to dismiss for failure to state a claim, finding no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs). These allegations against this Defendant are simply not enough to rise to the level of a constitutional violation as courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). Thus, Plaintiff's claims against Defendant Clinical Director DeMonte are dismissed without prejudice for failure to state a claim upon which relief may be granted.

     c.   Claims Against Defendant Doctor Lopez

Plaintiff makes one allegation against Defendant Doctor Lopez in the complaint. As detailed in *supra* Part II, Plaintiff alleges that Defendant Doctor Lopez stopped his Rimron medication for his mental health and night tremors because it caused erectile dysfunction. These allegations appear to indicate that Plaintiff was taken off this particular medication based on its medical side effects. Plaintiff's sparse allegations against Defendant Doctor Lopez fail to state a claim upon which relief may be granted. Indeed, Plaintiff's allegations appear to make clear that he was taken off of a particular medication based on its medical side effects. Accordingly, the claims as alleged against Defendant Doctor Lopez are dismissed without prejudice.

  B.  <u>"Assault Related Claims"</u>

     a.   Claims Against Defendant Officer Hernandez

As described above, after being stabbed thirty-six times, Defendant Officer Hernandez responded to Plaintiff's unit. He placed Plaintiff in hand restraints, and, despite, the obvious blood and injuries, made Plaintiff walk to the medivac helicopter rather than seeking alternative modes of transport, or providing care on site. Given the early stages of these proceedings, this Court will permit Plaintiff's claims against Defendant Officer Hernandez to proceed past screening.

     b.   Claims Against Defendant Lieutenant Marrugo

Plaintiff's allegations against Defendant Lieutenant Marrugo were that he told Defendant Officer Hernandez over the radio to bring Plaintiff to the medical department. Later in the complaint, Plaintiff admits that Defendant Lieutenant Murrugo was not in the building at the time of the assault.

Plaintiff fails to state a claim against Defendant Lieutenant Marrugo. Indeed, he fails to state that Defendant Lieutenant Marrugo had any personal involvement in being deliberately indifferent to Plaintiff's medical care. He told Defendant Officer Hernandez to send Plaintiff to the medical department after the assault. Furthermore, he was not even "in the building" as admitted by Plaintiff at the time. This Court fails to see how the allegations as written in the complaint state a claim against this Defendant. Accordingly, Plaintiff's claims against Defendant Lieutenant Marrugo are dismissed without prejudice for failure to state a claim upon which relief may be granted.

      c.  Claims Against Defendant Officer Benton

Plaintiff next sues Defendant Officer Benton. To reiterate, Plaintiff alleges he was jumped by three inmates and stabbed thirty-six times. Defendant Officer Benton called in the code for a fight and grabbed two of the inmate perpetrators. However, Plaintiff alleges while Defendant Officer Benton did that, the third inmate continued to chase him and stab him.

The Third Circuit has held "that a corrections officer's failure to intervene in a beating can be the basis of liability . . . if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."[1] *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). In this case though, Defendant Officer Benton *did* intervene. He called in the code for a fight and grabbed two of the purported assaulters. Given these alleged facts by Plaintiff, this Court finds Plaintiff has failed to state a claim against Defendant Officer Benton. *See, e.g.*, *Armstrong v. New Jersey Dep't of Corr.*, No. 20-5125, 2023 WL 2728733, at *9 (D.N.J. Mar. 31, 2023) (granting summary judgment for Defendants on failure to intervene claim when they did

---

[1] At this screening stage, this Court expresses no opinion whether such a failure to intervene claim can proceed under *Bivens* after *Ziglar*, 582 U.S. 120.

intervene to the extent they could separate the two individuals).  Accordingly, Plaintiff's claims against this Defendant are dismissed without prejudice.

      d.   Claims Against Defendant Medical Administrator Martin

Plaintiff makes one allegation against Defendant Medical Administrator Martin. Plaintiff states that upon returning to F.C.I. Fairton, this Defendant told him that "they" knew that the medical cart was broken as a new one was supposed to be delivered on March 1, 2023, but had not yet arrived.

Plaintiff's allegations fail to state a claim against this Defendant. First, Plaintiff admits that Defendant Medical Administrator Martin understood that there was a problem with the medical cart, and that a new one had been ordered. It just had not yet arrived. Furthermore, and perhaps more importantly, Plaintiff fails to state that there were no other modes of transport such as a wheelchair or stretcher to be used to transport him to the medivac helicopter. Thus, the mere fact that there was an inoperable "medical cart," does not in and of itself, rise to the level of a constitutional violation against this Defendant for being deliberately indifferent to a serious medical need of Plaintiff. Indeed, it is not alleged that Defendant Medical Administrator Martin would have had knowledge that Plaintiff was going to need a medical cart or that no other mode of transportation to the medivac helicopter was available as an alternative. Accordingly, Plaintiff's claims against this Defendant are dismissed without prejudice for failure to state a claim upon which relief may be granted.

      e.   Claims Against Defendants S.I.S. Lieutenant Wilder & S.I.S. Investigator Kopistici

Plaintiff next states that Defendants S.I.S. Lieutenant Wilder and S.I.S. Investigator Kopistici are liable to him because he was placed in the SHU for 150 days. For the following

reasons, Plaintiff's claims against these two Defendants will be dismissed with prejudice for failure to state a claim.

Courts within this Circuit have found that a Plaintiff's claim regarding placement in the SHU while incarcerated fails to state a claim under *Bivens*. For example, in *Eads v. United States*, No. 21-17369, 2024 WL 278720, at *4-5 (D.N.J. Jan. 25, 2024), the plaintiff sought to amend his complaint with a claim that he was improperly placed in the SHU at F.C.I. Fairton. The Court examined whether the proposed amendment would be futile as constituting something meaningfully different from *Carlson*. Ultimately, the Court held as follows:

> In *Carlson*, an inmate's estate alleged that prison officials failed to provide the inmate with competent medical care following an asthma attack, which ultimately resulted in the inmate's death. 446 U.S. at 16 n.1. In that regard, the constitutional violation recognized in Carlson arose out of deliberate indifference to a serious medical need. Here, however, Count V of the proposed second amended complaint alleges, essentially, a violation arising out of allegedly unconstitutional conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (recognizing that the Eighth Amendment requires prison officials to "provide humane conditions of confinement"). The Supreme Court has not recognized a *Bivens* cause of action for conditions of confinement claims. *Berry*, 2023 WL 2424181, at *4-5. Accordingly, the Court finds that Plaintiff's retaliation claims present a new Bivens context. *See Hernandez* [*v. Mesa*], 140 S. Ct. [735,] 743 [(2020)] ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").
>
> Because Count V concerns a new *Bivens* context, the Court next considers "whether any 'special factors counsel[ ] hesitation' in extending a Bivens remedy to [this] context." Shorter, 12 F.4th at 372 (alteration in original) (quoting *Ziglar*, 582 U.S. at 135). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018).
>
> Here, both factors would suggest that a Bivens remedy is unavailable as to Plaintiff's claim in Count V. First, "[t]he Supreme

Court has held that 'a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure,"'" and has concluded "that the BOP's Administrative Remedy program satisfies this requirement." *Berry* [*v. Fitgerald*], [No. 17-4904] 2023 WL 2424181, at *6 [(D.N.J. Mar. 9, 2023)] (quoting *Egbert* [*v. Boule*], 596 U.S. [482,] 493 [(2022)]).

Separate from the availability of administrative remedies, the Third Circuit has already concluded in similar cases that separation-of-powers concerns likewise foreclose a Bivens remedy for this type of claim. In *Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (*Mammana II*), prison staff punished an inmate for seeking medical care by placing him into administrative segregation, where the inmate was "deprived of his clothing, provided only 'paper like' coverings instead, denied bedding, and exposed to low cell temperatures and constant bright lighting for four days." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 370-374 (3d Cir. 2019) (footnote omitted) (*Mammana I*). The Third Circuit found that the plaintiff's claims presented a new Bivens context, and "significant separation-of-powers concerns" militated against permitting a Bivens action to proceed. *Mammana II*, 856 F. App'x at 415. The Third Circuit reasoned:

> Candidly, [Mammana] asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court. "Heeding the reasoning in Abbasi, we must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" *Bistrian*, 912 F.3d at 95 (quoting *Abbasi*, [582 U.S. at 136]). Recognizing such a broad new category of claims would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of our limited constitutional power. . . .
>
> That is a special factor counseling hesitation to expand Bivens. Because we pause, we must "reject the request" to recognize this new Bivens context.

*Id.* at 415-16 (footnote omitted).

> The *Mammana II* court's reasoning carries equal force here. The Court further notes that Plaintiff's claims regarding his placement in the SHU implicate "executive policies" regarding inmate discipline, which "threatens a large burden to both the judiciary and prison officials." *Bistrian*, 912 F.3d at 96 (declining to extend Bivens remedy to claim brought under First Amendment for placement in SHU as retaliation for inmate's lodging complaints about officers' conduct). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Berry*, 2023 WL 2424181, at *5 (quoting *Egbert*, 596 U.S. at 492). Because there are many reasons to pause before extending Bivens in this case, the Court finds that Plaintiff's amendment as to Count V is futile, and will therefore DENY Plaintiff leave to amend as to that count.

*Eads*, 2024 WL 278720, at *5.

Similarly, in *Styles v. Ortiz*, No. 23-3755, 2023 WL 8096902, at *3-4 (D.N.J. Nov. 21, 2023), the United States District Court for the Eastern District of Pennsylvania analyzed a claim from a plaintiff involving his placement in the SHU and whether the plaintiff could proceed on such a claim at screening.  In dismissing the claim with prejudice, the Eastern District of Pennsylvania stated as follows:

> [t]he crux of Mr. Styles's claim is that his placement in the SHU at FDC for nearly 40 months over the time period from January 2013 to July of 2018 violated his due process rights. Mr. Styles' claim must be dismissed because there is no *Bivens* remedy available based on these allegations. In *Bistrian*, the Third Circuit held that no *Bivens* claim exists for an alleged Fifth Amendment violation based on placement of a pretrial detainee in punitive detention. *Bistrian*, 912 F.3d at 94. In denying *Bistrian*'s claim, the Third Circuit concluded that special factors did not warrant an extension of *Bivens* to the context of punitive detention in SHU because it "calls in question broad policies pertaining to the reasoning, manner, and extent of prison discipline." *Bistrian*, 912 F.3d at 94. The Third Circuit further reasoned that because "courts are ill equipped to deal with the increasingly urgent problems in prison administration and reform," and because the "Bureau of Prisons, not the judiciary, has the expertise, planning and the commitment of resources necessary for the difficult task of running a correctional facility ... separation-of-powers concerns counsel a policy of judicial restraint." *Id.* at 94-95 (cleaned up).

17

> Mr. Styles's constitutional claim challenging his placement and time spent in the SHU are indistinguishable in any meaningful way from the claims at issue in *Bistrian.* Accordingly, *Bivens* does not provide a cause of action for Mr. Styles to challenge the constitutionality of his time in the SHU from January 2013 to July 2018, or on any other date.[9] *See id.*; *see also Rowland v. Pistro*, 2021 WL 5631692, at *6 (E.D. Pa. Nov. 29, 2021) (relying on *Bistrian* for conclusion that "*Bivens* does not provide a cause of action for [the plaintiff] to challenge the constitutionality his placements in the SHU"); *Gary v. Rocks*, 2022 WL 704644, at *6 (E.D. Pa. Mar. 8, 2022) (dismissing *Bivens* claim based on six-month stay in the SHU). Since Mr. Style's claim is not cognizable under *Bivens*, we will dismiss it with prejudice because Mr. Styles cannot cure the defects in this claim.

*Styles*, 2023 WL 8096902, at *3–4.

The reasoning in *Eads* and *Styles* is persuasive in finding that Plaintiff cannot proceed with a *Bivens* claim against these two Defendants for his placement in the SHU. The landscape of a plaintiff's ability to bring different types of *Bivens* claims has changed drastically post-*Ziglar* as illustrated above. Plaintiff's claims against these two Defendants shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

C.   Claims Against Defendants C-Unit Counselor Brooks and C-Unit Case Managers Defoney & Gibson

Plaintiff's claims against Defendants C-Unit Counselor Brooks and Defendants C-Unit Case Managers Defoney and Gibson relate to their purported failure to respond to Plaintiff's grievances. "The filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement." *Miller v. Trometter,* No. 11–811, 2012 WL 5933015, at *13 (M.D. Pa. Nov. 27, 2012) (citing *Rode,* 845 F.2d at 1207). Thus, "prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Miller,* 2012 WL 5933015, at *13 (citing *Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith,* 237 F. App'x 756, 758

(3d Cir. 2007) (per curiam)) (other citations omitted); *see also Robinson v. Green,* No. 12–1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov. 5, 2012); *Mercado v. Ellis,* No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiffs only claims against the named defendants are based on their failure to investigate or respond to Plaintiffs letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted); *see also Dinkins v. Potope*, No. 19-1460, 2020 WL 4504428, at *8 (M.D. Pa. Aug. 5, 2020) (stating "involvement limited to responding to grievances is insufficient to establish *Bivens* liability").

Based on the above, to the extent Plaintiff relies on these three Defendants' failure to respond to his grievances, that alone is insufficient to state a claim.

Plaintiff also alludes to being targeted by unnamed SHU staff members for filing grievances. He states he has been retaliated by having his recreation restricted and his property taken as well as had multiple disciplinary actions taken against him. "A prisoner alleging retaliation must show: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Prior to the United States Supreme Court decision in *Ziglar*, the United States Court of Appeals for the Third Circuit implied a *Bivens* remedy for an inmate's claim a prison official retaliated against him for exercising his First Amendment rights. *See Mack v. Warden Loretto*

*FCI*, 839 F.3d 286, 296-97 (3d Cir. 2016). However, post-*Ziglar*, the Supreme Court has made it clear that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 498-99; *see also Gilmore v. McGann*, No. 23-1467, 2023 WL 6141606, at *1 (3d Cir. Sept. 20, 2023) (affirming District Court's dismissal of Plaintiff's First Amendment retaliation claim because *Bivens* does not encompass such an action); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) ("[T]he retaliation claim is not a recognized *Bivens* remedy[.]"); *King v. Ponce*, No. 21-5628, 2023 WL 8253060, at *4 (D.N.J. Nov. 29, 2023) (citing approvingly to *Egbert* in granting Defendants' motion to dismiss prisoner plaintiff's *Bivens* First Amendment retaliation claim). Thus, to the extent Plaintiff is attempting to assert a First Amendment retaliation claim under *Bivens*, it is dismissed with prejudice for failure to state a claim upon which relief may be granted.

## V.     MOTION TO APPPOINT PRO BONO COUNSEL

Plaintiff has filed a motion to appoint pro bono counsel. (*See* ECF 6). Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). To appoint pro bono counsel, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating the *Tabron* factors).

Additionally, the power to grant appointment of counsel lies solely with the discretion of this Court. *See Tabron*, 6 F.3d at 155.

Upon analyzing these factors, this Court will deny Plaintiff's motion to appoint pro bono counsel without prejudice at this time. For example, this case does not seem necessarily complex. Plaintiff should be able to pursue this case on his own, at least at this early screening stage. If, however, circumstances change, Plaintiff may file another motion to appoint pro bono counsel for reconsideration anew by the Magistrate Judge.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's complaint is proceeded in part. Plaintiff's claims against Defendant Officer Hernandez shall proceed. The remainder of Plaintiff's claims are dismissed. Plaintiff's claims against Defendant S.I.S. Lieutenant Wilder and S.I.S. Investigator Kopistici are dismissed with prejudice as are Plaintiff's claims related to First Amendment retaliation. The remainder of the claims are dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's motion for the appointment of pro bono counsel is denied. An appropriate order will be entered.


DATED:  May 1, 2024                                    s/ Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge